---
In the Matter of the Claim of KARL MCDERMOTT,
as parent and legal guardian of INFANT E.M.,

                        Plaintiffs,                        **Case No.: 25-cv-885**

      -against-

CITY OF SOUTHAMPTON, SUFFOLK COUNTY
DEPARTMENT OF SOCIAL SERVICES, THE LITTLE
FLOWER SCHOOL,UNION FREE SCHOOL DISTRICT
SOUTHAMPTON UNION FREE SCHOOL DISTRICT,
LITTLE FLOWER CHILDREN AND FAMILY SERVICES
of NEW YORK, TRICIA DESIDERIO, Southampton
Schools Assistant, Superintendent for Student Services,
NICHOLAS J. DYNO, Southampton School Superintendent,
DR. HAROLD DEAN, ROBERT SCAPPATORE, MICHAEL
GORDON, JENNIFER NELSON, ALISSA DEAKIN, ERIC
ULRICH, DAVID RICHIE, THE SUMMITT SCHOOL AT
NYACK, and JOHN AND JANE DOES 1-10,

                        Defendants.

---

Plaintiff KARL MCDERMOTT, as parent and legal guardian for INFANT E.M., by and through their attorney, THE LAW OFFICES OF TRICIA S. LINDSAY, PC, and for their Complaint, herein states and alleges:

**PRELIMINARY STATEMENT**

1. This is a civil action requesting compensatory damages, punitive and monetary relief for the actions of DEFENDANTS CITY OF SOUTHAMPTON, SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, THE LITTLE FLOWER, LLC., SOUTHAMPTON UNION FREE SCHOOL DISTRICT, LITTLE FLOWER CHILDREN AND FAMILY SERVICES, UFSD, TRICIA DESIDERIO, Southampton Schools Assistant Superintendent for Student Services, NICHOLAS J. DYNO, Southampton School Superintendent, DR. HAROLD DEAN, ROBERT SCAPPATORE, MICHAEL GORDON,

regard to its students, failed to properly investigate INFANT PLAINTIFF E.M.'s complaints of bullying and harassment, failed to provide adequate security for the safety of E.M., proliferated a consistent and continuous pattern of violations against INFANT PLAINTIFF E.M.'s civil rights and refused to abide by DEFENDANTS , LFLLC, LLCS, and SSN's rules and policies, which caused INFANT PLAINTIFF E.M. to be assaulted, harassed, psychologically and emotionally harmed while in the care, custody and control of DEFENDANTS SHUFSD, LFLLC, LLCS and SSN.

6. DEFENDANTS SHUFSD, LFCS, LFLLC, SSN, sitting in loco parentis with regard to its students, intentional and/or willful refusal to follow the rules and regulations of its own policies directly resulted in the foreseeable harm to INFANT PLAINTIFF E.M.. DEFENDANTS showed a willful disregard for INFANT EM's safety by using its authority to create an environment where the injuries sustained by INFANT PLAINTIFF E.M. would be allowed to occur. These assertive actions by DEFENDANTS constitute civil rights and constitutional violations.

7. KARL MCDERMOTT, as parent and legal guardian of INFANT PLAINTIFF E.M., suffered psychological injuries including severe and continuing emotional distress from the DEFENDANTS' refusal to take the necessary and proper steps required to protect their daughter.

8. Specifically, PLAINTIFFS allege that DEFENDANTS negligently, wantonly, recklessly, intentionally, and knowingly failed to keep INFANT PLAINTIFF safe from being targeted with sexual harassment and assault, threats and physical violence in her dormitory room and other areas on campus. INFANT PLAINTIFF alleges that DEFENDANTS failed to properly investigate the conduct of the other students who harassed and assaulted EM both

3

students to "sneak into" the rooms of other students to engage in sexual intercourse, ignoring window alarms, leaving students unsupervised for extended periods of time, and other violations and negligent acts, despite all of the residents of Little Flower being minors, both physically and developmentally.

13. DEFENDANT SSN has a sordid history of allowing bullying and physical violence against its students by other students. In fact, the Nyack Police Department is often called to the school for various reasons involving students, and the students involved in the attack against E.M. have a history of bullying, including physical attacks, verbal attacks and cyberbullying and so, were known by the staff to be problem students, yet the staff of DEFENDANT SSN did nothing to address EM's complaints or to ensure her safety and security while in their custody.

14. DEFENDANT SSN's persistent refusal to intervene when EM was being assaulted led to a decline in the quality of life for EM, and as a result EM was negatively impacted, suffering great harm physically, psychologically, emotionally, and academically.

## JURISDICTION AND VENUE

15. This action arises under 42 U.S.C. §§ 1983, 1981, for the deprivation of rights secured by the United States Constitution, including but not limited to, rights under the First, Fourth, and Fourteenth Amendments, and under the laws of New York State for negligence and gross negligence, sex assault, personal injury, discrimination based on race and disability, unlawful dissemination and publication of EM's naked image to the internet in violation of her right to privacy by appropriation.

("LFLLC") and The Summit School at Nyack (hereinafter "SSN"). EM is also a child of mixed race, as Mr. McDermott is black, and Ms. McDermott is white.

23. CITY OF SOUTHAMPTON (hereinafter "SOUTHAMPTON") is an incorporated village in the Town of Southampton in Suffolk County. At all times relevant to this Complaint, the Southampton UFSD and LFUFSD were under the governance of the DEFENDANT CITY OF SOUTHAMPTON.

24. LITTLE FLOWER UNION FREE SCHOOL DISTRICT, (hereinafter "LFUFSD"), is a public school located in Wading River, New York, in Suffolk County. LFUFSD exists and operates by virtue of the laws of New York State and is governed by the laws of the State of New York and the United States and is the only residential Special Act public school district on Long Island. Students who attend LFS are referred to LFUFSD by other local schools in New York State, including the Southampton Union Free School District, through their Committee on Special Education (CSE). At all times relevant to this Complaint, prior to April 2023, INFANT PLAINTIFF E.M. attended LFUFSD and LFCFS.

25. LITTLE FLOWER CHILDREN AND FAMILY SERVICES (hereinafter "LFCFS"), was, at all times relevant to this Complaint, a residential treatment center licensed by the New York State Department of Social Services to treat the students of LFUFSD, including INFANT PLAINTIFF E.M. LFCFS is located in Wading River, New York, Suffolk County. LFCFS exists and operates by virtue of the laws of New York State and is governed by the laws of the State of New York and the United States.

26. MICHAEL GORDON, was, at all times relevant to this Complaint, the Vice Principal of LFUFSD and as such, had a duty of care to oversee the safety, well-being and security of

7

recommended E.M. and her parents, including PLAINTIFF, to the LFUFSD and LFCFS, and THE SUMMIT SCHOOL AT NYACK.

31. TRICIA DESIDERIO, at all times relevant to this Complaint, was the Assistant Superintendent for Student Services of the SHUFSD. As the Assistant Superintendent for Student Services DEFENDANT DESIDERIO is responsible for the management and oversight of all aspects of the Special Education Office which oversees the Special Education Department, Pupil Support ("PPS") and the Coordinator of Academic Support Services. DEFENDANT DESIDERIO was directly involved in the placement of INFANT PLAINTIFF E.M. in the LFUFSD, LFCFS and THE SUMMITT SCHOOL AT NYACK. DEFENDANT DESIDERIO is being sued here in her individual and official capacity.

32. NICHOLAS J. DYNO, at all times relevant to this Complaint, was the Superintendent of Schools for the SHUFSD. As the Superintendent of Schools, DEFENDANT DYNO is responsible for the management and oversight of all aspects of the SCHOOL DISTRICT, including, but not limited to, Instruction, Finance, Personnel, Developing and implementing Board of Education policies, and carrying out the Board's vision and mission. DR. DYNO is being sued here in his official capacity.

33. DR. HAROLD DEAN at all times relevant to this Complaint was the Superintendent of LFUFSD. As superintendent, he is responsible for the management and oversight of all aspects of the SCHOOL DISTRICT, including, but not limited to, Instruction, Finance, Personnel, Developing and implementing Board of Education policies, and carrying out the Board's vision and mission. DR. DEAN is being sued here in his official capacity.

34. JENNIFER NELSON, at all times relevant to this Complaint, was Vice President of Operations for the residential program at LFUFSD. As the Vice President of Operations

39. SOUTHAMPTON UNION FREE SCHOOL DISTRICT EMPLOYEES "JOHN AND JANE DOES 1-10", were at all times relevant to this Complaint, employees, or agents of SHUFSD, and as such had a duty of care to oversee the safety, security, and well-being of the students, including INFANT PLAINTIFF E.M.. At all times relevant to this Complaint, SHUFSD employees were responsible for directing the education of INFANT PLAINTIFF E.M. as a special needs student, to ensure she receives a free and adequate education in a safe environment.

40. DISTRICT EMPLOYEES "JOHN AND JANE DOES 1-10", were, at all times relevant to this Complaint, employees, or agents of LFUFSD and LFCFS, and as such had a duty of care to oversee the safety, security and well-being of the students including INFANT PLAINTIFF E.M.. The identities of "JOHN and JANE DOES 1-10" are currently unknown to PLAINTIFF but are known to DEFENDANTS LFUFSD and LFCFS who are responsible for the acts and omissions alleged herein. DEFENDANTS "JOHN and JANE DOES 1-10" are being sued here in their individual and official capacity.

41. SUMMIT SCHOOL EMPLOYEES "JOHN AND JANE DOES 1-10", at all times relevant to this Complaint were employees or agents of DEFENDANT THE SUMMIT SCHOOL OF NYACK and as such had a duty of care to oversee the safety, security and well-being of the students including INFANT PLAINTIFF E.M.. The identities of "JOHN and JANE DOES 1-10" are currently unknown to PLAINTIFF but are known to DEFENDANT THE SUMMIT SCHOOL AT NYACK who are responsible for the acts and omissions alleged herein. DEFENDANTS "JOHN and JANE DOES 1-10" are being sued here in their individual and official capacity.

48. Around the age of six (6) years old and still barely speaking or communicating, E.M began seeing a new psychiatrist at Stony Brook once per week.

### B.     Southampton Unified School District

49. EM attended school within the SHUFSD from 2014 at age eight (8) to 2022, age thirteen (13).

50. During her time at SHUFSD, EM struggled with her academic development due to the persistent lack of resources and the District's refusal to adequately rectify the deficiencies.

51. As a result, E.M.'s academics was a persistent point of concern as SHUFSD did not seem intent on E.M. succeeding in her academics, and as time progressed, the situation continued to decline as E.M. was misdiagnosed with regards to her disability, which led to improper placements being made by the Committee on Special Education, which in turn created issues within the classroom as E.M. struggled to keep up with her peers.

52. The situation continued to decline to the point where E.M. was improperly placed in a seventh (7th) grade classroom where she was the only girl and the only Black student.

53. As a result, the students began to bully E.M. as she struggled to fit in with her peers and to keep up with her academics.

54. Upon information and belief, as time progressed the situation became worse as E.M. became the target each day in her classroom, by her peers as well as her teachers. E.M. was being bullied by her classmates and singled out by her teachers as the "problem." Yet, when spoken to about E.M.'s academic needs, these same teachers were unable to accurately speak to E.M.'s disability and/or educational assessments.

55. Plaintiff Karl McDermott and E.M.'s mother, Evelina McDermott, advocated vigorously for E.M. to receive the services necessary for her development and to which she was

C. **Little Flower Unified School District**

60. After attending the SHUFSD, up to age thirteen (13) and the ninth (9th) grade at the Southampton Middle School ("SMS"), E.M. transferred to LFUFSD where she resided until her junior year of school at age seventeen (17) when she was forced to leave after being repeatedly sexually assaulted by another student in her room and in the hallway of the school during the afterschool program at LF.

61. According to their website, Little Flower is an educational institution whose mission statement is to "meet the individual educational, social, and emotional needs of all students."

62. Little Flower promises and promotes enhanced safety measures and security for students, and peace of mind for parents.

63. According to their own website, Little Flower has even received grants from New York City to implement "a trauma-informed mindfulness program."

64. The irony of such will be apparent further along in this complaint.

65. Little Flower further received public funds in 2022, when they were awarded the NYSED 21 Century Community Learning Centers grant, which provided over one million dollars (1,000,000,000.00), in funding to Little Flower.

66. Little Flower also brags on their website that they are qualified as a "sanctuary institute", which they explain "symbolizes [the school's] commitment to providing a higher level of care, a trauma-sensitive environment for the people they serve and a better work environment for employees....[ sanctuary certification] is designed to promote, strengthen, and sustain [the school's] commitment to the maintenance of a trauma informed culture for all of its stake holders."


73. Before the day of the sexual assault on February 2023 ,"E" and "EM" were observed kissing in the Science Class by a teacher named Ms. Pacey. Upon information and belief, this teacher did not take preventive action, including failing to report the incident.

74. **BEING AS SHE IS LEGALLY DISABLED AND WAS A MINOR CHILD at the time, Plaintiff could not legally consent to sexual activity. The foregoing incident therefore constituted the raping of the Plaintiff, occurring on school premises and during school hours.**

75. Upon information and belief, on February 15, 2023, LF was short-staffed and there was not adequate teacher supervision for the students. Therefore, the students were unsupervised, and as a result E recognizing the opportunity, took advantage of the situation and lured E.M. into the hallway claiming he wanted to get water while actually planning to sexually assault her as he had done the previous night in her room at the cottage.

76. E.M. was unaware that E wanted to force her to have sexual intercourse with her and actually thought she was only going to get water.

77. On the day and time of this incident, E and EM were both in the gym for their afterschool activity. Mr. Dana and Mr. Paul were present in the gym with the students.

78. E and E.M. were both playing basketball with Mr. Paul and Mr. Dana. After some time, upon information and belief, E suggested to E.M. that they get water. Upon information and belief, E.M. asked Mr. Paul if she could get some water and he said she could. E did not ask if he could get some as well, but he did go with E.M. to the water fountain.

79. Unfortunately, there was no security guard to monitor or escort students to the water fountain while they were in the gym, so the students were allowed to go to the water fountain together, unsupervised.

88. Despite being aware of the incident, Defendants MICHAEL GORDON and ROBERT SCAPPATORE failed to immediately inform Plaintiff's parents and legal guardians of the true nature and severity of the incident, delaying such communication for approximately twenty-four (24) hours.

89. After the incident, Plaintiff KARL MCDERMOTT was notified by Vice Principal DEFENDANT MICHAEL GORDON who merely stated that there was an incident at the school but E.M. was okay. At no point did the school authorities intervene to provide EM with the necessary medical treatment that she would need to handle such a heinous assault.

90. Following the incident, Plaintiff E.M. was not provided with immediate medical care by the defendants, placing her at risk for further harm.

91. As a direct result of the assault and Defendants' actions and inactions, Plaintiff has suffered and continues to suffer severe and ongoing emotional, psychological, and educational harm.

92. Such harm as was memorialized on the record by EM at the 50 (H) hearing on June 29, 2023 and on August 23, 2023.

**Weekly Incidents of Sexual Assault of E.M.**

93. At said hearing, EM provided a detailed account of her experiences and interactions with "E", including other instances of sexual activity when she had sexual intercourse with E, both in the cottage where she resided while attending LF and by a water fountain, indicating that these interactions began in or about October 2022 and continued until the incident on February 15, 2023.

94. As a result of the sexual assaults, EM experienced mixed feelings about these encounters, initially feeling scared, but then growing accustomed to the acts (grooming), and later

19

assaults occurring on its campus but failed to take adequate measures to stop or prevent such violence, thereby facilitating the sexual abuse of its minor, special needs resident students.

101. Defendants, by their actions and omissions, have violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and have been grossly negligent under New York State law.

102. The security lapses and lethargic reactions by staff to their knowledge of these incidents were deplorable.

103. Little Flower does not even attempt to adhere to their own safety and security measures, and the "security" that they hire has no regard for student safety.

104. The response by staff to these heinous sexual assaults was abysmal and has negatively impacted E's life.

105. Little Flower's supposed "commitments" to "safe environments" are nothing more than lip service. If Little Flower truly held themselves to such standards, it would be nearly impossible for E.M to have been chronically victimized and ultimately raped under their watch.

106. Little Flower stated that they were understaffed, but it was their duty to post staff near the water fountain and the gymnasium to protect E.M. It was also their duty to ensure the designated alarms were set each night in the residences and that staff responded accordingly when and if an alarm was triggered. Further, they had a duty to ensure students were not out and about on campus at night unsupervised where they were vulnerable to physical harm or worse occurrences.

115. Upon information and belief, Mr. Clayton's response to E.M was "I don't care, leave me alone, I am watching a movie."

116. At this point, E.M was left resigned to the fact that she had no choice but to return to her room and engage in sexual activity with E, as it was clear that Mr. Clayton was more interested in the plot of the movie he was watching than a child being actively sexually assaulted. Upon information and belief, E.M even calling out for help to Mr. Clayton once last time, saying that E was in her room and she needed help, was dismissed as Mr. Clayton responded by telling E.M to "go back to sleep."

117. After this last plea for help, E proceeded to remove his clothes, forcefully remove E.M's clothes, and rape her for about 30-40 minutes. He then instructed her to keep this encounter a secret.

118. Due to the negligence of the LFUSD and LFCS staff, E continued his weekly trips to EM's room knowing that he would not be caught.

119. After being forced to leave LFSD and LFCS due the shame and humiliation, not to mention the emotional and psychological trauma of being repeatedly raped in an environment where a person is supposed to be safe, E.M. was placed on homeschool without any direction, structure, guidance or supports for Plaintiff McDermott.

**Southampton Union Free School District and EM's Regression**

120. With her special needs due to her disabilities, E.M. regressed severely, and sunk into depression due to the isolation, shame, fear, guilt, and trauma of the entire situation.

128. Plaintiff KM and Ms. McDermott was fully aware that E.M. not only needed academic and social supports, but also familial supports, especially in light of the severe trauma she had just endured over a five (5) month period of repeated sexual assault and rape as a student at LFSD and LFCS.

129. Not being offered any other viable options to ensure E.M. would not suffer any more losses, Ms. McDermott felt it was her only choice and decided to take the advice of SHUFSD's and DEFENDANT DESEDERIO's advice, and enrolled E.M. in The Summit School at Nyack (SSN) towards the **end of May or early June 2023 and** began attending shortly afterwards. E.M. received another residential placement, as no other suitable options were available.

130. E.M. was enrolled at SSAN in or about June 2023 and began on shortly thereafter.

131. E.M. was assigned to a dormitory where she resided with three (3) other girls who began bullying her almost immediately. Still dealing with the trauma from the incidents at LF, E.M. withdrew and stayed to herself many times.

132. Upon information and belief, these girls were known to SSN to be problem students who were known to bully other students, especially Jane Doe, who was eighteen (18) years old.

133. The bullying by these girls went unchecked to the point that these girls assaulted E.M. in her dorm room one day, pushing her to the floor, then forcibly removed E.M.'s clothes and took inappropriate pictures of her, without her consent, and posted them on Snapchat.

134. Upon information and belief, E.M. saw the video on another girl's phone, which increased her anxiety and depression.

25

this duty, treating it as an afterthought rather than a priority. This neglect has directly resulted in the harm suffered by the Plaintiff.

142. Despite being aware of the sexual assault on the Plaintiff, the Defendants failed to take any meaningful action to address the root cause of the assault or to prevent future occurrences. This failure further underscores the Defendants' deliberate indifference to the Plaintiff's safety and rights.

143. The psychological harm endured by EM as a result of the rape and sexual assault is profound and multifaceted, reflecting a deep violation of the most personal and intimate aspects of one's being; and one that will affect EM for the rest of her life.

144. As a result of being physically and sexually assaulted, EM suffered, and continues to suffer from severe anxiety, depression, loss of trust in adults or authority figures, and feelings of worthlessness.

145. In this case, the defendants' failure to adequately train and supervise their staff is identified as the direct and proximate cause of the plaintiff's injuries. This negligence reflects a systemic issue within the defendants' organization, where the safety and rights of vulnerable community members, particularly disabled minors, are not prioritized.

146. The deliberate indifference shown by the defendants towards the plaintiff's welfare is not only egregious but also a clear violation of the plaintiff's constitutional rights under 42 U.S.C. § 1983. Such indifference is indicative of a broader disregard for the well-being of those under their care, highlighting a failure in both policy and practice.

## CLAIM TWO
### 42 U.S.C § 1983: Failure to Protect

147. Plaintiff reiterates lines 1-146 as if fully incorporated herein.

protection of disabled minors is not only a failure of policy but also a moral failing. The rape and sexual assault of the plaintiff are direct consequences of this neglect, highlighting a disturbing pattern of indifference and a lack of accountability within the defendants' organization.

153. Furthermore, the defendants' failure to take any meaningful action to address the root cause of the assault or to prevent future occurrences, even after becoming aware of the sexual assault, further demonstrates their gross negligence. This inaction is indicative of a systemic disregard for the rights and safety of the plaintiff, exacerbating the trauma and harm suffered. The defendants' indifference to the plaintiff's plight and their failure to implement necessary changes to prevent such incidents from occurring again are inexcusable and demand accountability.

154. The defendants must be held accountable for their failure to train and supervise their staff adequately, which has resulted in the rape and sexual assault of a disabled minor. The defendants' actions and inactions have not only violated the plaintiff's constitutional rights but have also betrayed the trust placed in them by the community they serve.

155. Little Flower has a duty of both law and contract to protect E.M and provide her with a safe environment complete with security and supervision at all times.

156. Little Flower sits in loco parentis when they accept a child to their institution and therefore have a duty to take any and all reasonable measures to protect the safety and well-being of students.

157. Little Flower owed a duty of protection to E.M under the law and failed therein as detailed throughout this complaint.

162.    The defendants' gross negligence, characterized by their failure to adequately train and supervise their staff, directly and proximately caused the plaintiff's emotional distress. This case exemplifies the critical importance of holding entities accountable for their duty to protect the most vulnerable from harm. The defendants' deliberate indifference and failure to act upon knowledge of the assault not only exacerbated the plaintiff's suffering but also demonstrated a flagrant disregard for her well-being and rights and is the proximate and/or direct cause of the injuries suffered.

## CLAIM FIVE
### Fraudulent Misrepresentation

163.    Plaintiff reiterates lines 1-162 as if fully incorporated herein.

164.    The Little Flower School grossly misrepresents their capabilities as an institution to provide adequate care and security for disabled students.

165.    Plaintiffs were led to believe by Little Flower that E.M would be housed and educated in a safe environment which fosters a culture of trauma awareness, sensitivity, and education.

166.    Little Flower touts their numerous awards and certifications in an attempt to provide parents with a false sense of security and to induce them to send their child to be cared for at their institution.

167.    In reality, Little Flower is either not willing or not capable of providing the level of security, awareness, trauma support and education that they brag of. Plaintiffs had no reason not to rely on Little Flowers representations surrounding safety and a culture of acceptance and awareness for mentally and intellectually diabled youth; all of which turned out to be false.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Award compensatory and punitive damages in an amount to be determined at trial;

b. Grant such other and further relief as this Court deems just and proper.

Plaintiff further demands a trial by jury on all issues so triable.

Dated: February 14, 2025.

                Respectfully submitted,

                LAW OFFICES OF
                TRICIA S. LINDSAY, PC

By:    /s/ Tricia S. Lindsay, Esq.
                *Attorney for Plaintiffs*
                531 E. Lincoln Ave., ste. 5B
                Mount Vernon, NY 10552
                ph:  (347) 386-4604; (914) 668-4908
                        (347) 349-5433
                Fax: (914) 840-1196
                Email:  tricialindsaylaw@gmail.com
                            Attorney@tricialindsaylaw.com